# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1026 | **DATE** | 7/13/2001 |
| **CASE TITLE** | SMURFIT NEWSPRINT vs. SOUTHEAST PAPER MFG. CO. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due _____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry]   **Motion (5-1) to dismiss is granted/denied in part. Count I is dismissed.** |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 17 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 12 |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 JUL 16 PM 4:48 | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SMURFIT NEWSPRINT
CORPORATION,

Plaintiff,

v.

SOUTHEAST PAPER
MANUFACTURING COMPANY,

Defendant.

No. 01 C 1026
Judge James B. Zagel

DOCKETED
JUL 1 7 2001

## MEMORANDUM OPINION AND ORDER

Smurfit Newsprint Corporation ("Smurfit") agreed to sell its paper mill in Newberg, Oregon to Southeast Paper ("SP"), and in 1999, the parties negotiated an Asset Purchase Agreement. SP offered employment to most of the unionized workers at the mill, but it did not recognize the employees' years of service with Smurfit when determining various benefits. After SP took over, the Association of Western Pulp and Paper Workers Local No. 60 ("Union"), filed a grievance against Smurfit. The Union claimed that Smurfit owed its employees severance benefits (termination pay) because SP's lack of recognition for years of service made the transfer of the mill a "permanent closure" under the collective bargaining agreement with the Union. An arbitrator agreed with the Union on December 4, 2000. Smurfit now says SP ought to pay these severance benefits because the Asset Purchase Agreement contains an indemnification provision. To that end, Smurfit seeks a declaration that SP must indemnify Smurfit or that SP breached the



Asset Purchase Agreement when it failed to recognize the employees' years of service. SP moves to dismiss. Fed. R. Civ. P. 12(b)(6).

SP says the complaint is not a proper subject for declaratory judgment. Although argued last, and somewhat half-heartedly, I will address this point first. The arbitrator has ruled, so according to SP, everything is in the past and there is no future conduct to which the parties need to adjust their behavior. See *Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1994). However, there is no doubt that a declaratory judgment will settle the controversy between these parties and clarify the legal relations in issue. SP does not argue that a race to *res judicata* is afoot, and there is no danger of encroaching on state court jurisdiction. (There is no allegation of another possible forum.) Finally, SP does not urge an alternative or more effective remedy. Basically, SP makes none of the traditional arguments against the exercise of discretion to hear a declaratory judgment action. *Id.* at 579. I do not know whether the arbitrator's judgment has been confirmed, but I assume there is still room for Smurfit to appeal the arbitrator's ruling.[1] Therefore, there are avoidable damages that may accrue in the future. Complaints seeking a declaration of a duty to indemnify are legion and this complaint is properly styled in those terms. The breach of contract claim might be a different story, see *Household Financial Services, Inc. v. Northern Trade Mortg. Corp.*, 1999 WL 782072 *3 (N.D. Ill. 1999), but I believe it is within my discretion to declare whether a breach has occurred. There is no forum-shopping danger in this case because it is the plaintiff who accuses the defendant of a breach and invokes this Court's diversity jurisdiction to hear the dispute. Count II is already styled as a

---

[1] Given the procedural posture of this case, *i.e.*, a motion to dismiss, I think it reasonable to draw this inference in Smurfit's favor.

breach of contract, the only thing missing is perhaps a request for damages that have already been incurred. Plaintiff may seek leave to amend this count to add such a prayer for relief (if on the merits it states a claim), but dismissal is not necessary.

This case is premised upon diversity jurisdiction, therefore I must apply the choice-of-law rules of the forum state, Illinois. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941). Section 10.03 of the Asset Purchase Agreement says, "This Agreement shall be governed by, and construed in accordance with the laws of the State of New York, applicable to contracts executed in and to be performed in that State." Smurfit suggests that Illinois law might apply, but it makes this argument in a footnote with little development. This passing reference fails to overcome the strong presumption in favor of the parties' contractual agreement (and obvious intent). See *Hofeld v. Nationwide Life Ins. Co.*, 59 Ill.2d 522, 529, 322 N.E.2d 454, 458 (1975) (law applicable to contract is that which the parties intended; when intent is expressed it should be followed). "[W]hen an express choice of law is made, it will be given effect in Illinois unless it would *both* violate fundamental Illinois public policy *and* Illinois has a materially greater interest in the litigation than the chosen State." *English Company v. Northwest Envirocon, Inc.*, 278 Ill. App.3d 406, 411, 663 N.E.2d 448, 452 (2nd Dist. 1996) (emphasis in original). A difference between the laws of New York and Illinois is not enough to demonstrate a fundamental public policy, and Smurfit says no more. The contract is quite clearly governed by New York law.

The relevant provisions of the contract are:

SECTION 6.01 <u>Obligation to Hire Employees</u>. (a) Purchaser is not assuming the collective bargaining agreement dated April 1, 1995 ("Union Agreement") between Seller and the Association of Western Pulp and Paper Workers Local No. 60 ("Newberg Union") covering the Businesses [sic] hourly union employees who are employed by Seller immediately before the

3

Closing Date ("Union Employees"). Notwithstanding the foregoing, Purchaser agrees (i) effective as of the Closing Date, to offer employment to substantially all the Union Employees on terms and conditions comparable to the Union Agreement, (ii) with respect to the Union Employees offered employment to, effective as of the Closing Date, recognize the Newberg Union on behalf of the Union Employees who accept employment with Purchaser, and (iii) after the Closing Date, to negotiate in good faith with the Union over the changes to the terms and conditions of employment for the Union Employees. Seller agrees to cooperate with Purchaser in its dealing with the Newberg Union and Union Employees.

[6.01(c)] Purchaser shall be responsible for all claims for severance benefits which are properly payable under the terms of Seller's severance plan as currently in effect (a copy of which has been furnished to Purchaser) by (i) any Union Employees, and (ii) any Non-Union Employees that (A) Purchaser fails to offer employment with Purchaser as of the Closing or (B) are offered employment by Purchaser in which the terms thereof are not in compliance with Section 6.01(b) and such Employees do not accept employment with Purchaser on such terms. Purchaser agrees to indemnify and hold Seller harmless from any claims described in the immediately preceding sentence. Purchaser further covenants and agrees to indemnify and hold Seller harmless from and against any claims or causes of action or losses arising therefrom (other than those relating to severance benefits) asserted by employees of the Business based exclusively on an allegation that Purchaser violated any federal or state employment discrimination law in failing to offer employment to such employees by Purchaser.

SECTION 8.02 <u>Indemnification by the Purchaser</u>. (a) The Purchaser agrees, subject to the other terms and conditions of this Agreements [sic], to indemnify and defend Seller against and hold Seller harmless from, against and in respect of any and all claims, liabilities, obligations, losses, costs, expenses, penalties, fines and other judgments (at equity or at law) and damages whenever arising or incurred (including, without limitation, amounts paid in settlement, reasonable attorneys fees and expenses) relating to or arising out of (i) the breach of any representation, warranty, covenant or agreement of Purchaser herein, (ii) the Assumed Liabilities, (iii) any fraud, willful misconduct, bad faith or intentional breach of any representation, warranty, covenant or agreement made by Purchaser in this Agreement or the Ancillary Agreements and (iv) the operations of the Business after the Closing Date by Purchaser. The claims, liabilities, obligations, losses, costs, expenses, penalties, fines, judgments and damages of Seller described in this Section 8.02(a) as to which Seller is entitled to indemnification are referred to as "Seller Losses" in this Agreement.

[8.02(b)] Seller agrees to give the Purchaser prompt written notice of any claim, assertion, event or proceeding by or in respect of a third party of which it has knowledge concerning any liability or damage as to which it may request indemnification hereunder. The Purchaser shall have the right to direct, through counsel of its own choosing, the defense or settlement of any such claim or proceeding at its own expense. If the Purchaser elects to assume the defense of any such claim or proceeding, Seller may participate in such defense, but in such case the expenses of

4

Seller shall be paid by Seller. Seller shall provide the Purchaser with access to its records and personnel relating to any such claim, assertion, event or proceeding during normal business hours and shall otherwise cooperate with the Purchaser in the defense or settlement thereof, and the Purchaser shall reimburse Seller for all its reasonable out-of-pocket expenses in connection therewith. If the Purchaser elects to direct the defense of any such claim or proceeding, Seller shall not pay, or permit to be paid, any part of any claim or demand arising from such asserted liability, unless the Purchaser consents in writing to such payment or unless the Purchaser, subject to the last sentence of this Section 8.02(b), withdraws from the defense of such asserted liability, or unless a final judgment from which no appeal may be taken by or on behalf of the Purchaser is entered against Seller for such liability. If the Purchaser shall fail to defend, or if, after commencing or undertaking any such defense, the Purchaser fails to prosecute or withdraws for such defense, Seller shall have the right to undertake the defense or settlement thereof, at the Purchaser's expense. If Seller assumes the defense of any such claim or proceeding pursuant to this Section 8.02(b) and proposes to settle such claim or proceeding prior to a final judgment thereon or to forego appeal with respect thereto, then Seller shall give the Purchaser prompt written notice thereof and the Purchaser shall have the right to consent to the settlement or assume or reassume the defense of such claim or proceeding.

## I. Count I – Declaration of Indemnification

SP's main argument for dismissal is that Smurfit failed to give SP prompt written notice of the severance benefit claims for which indemnity is sought, and that this constitutes a failure of a condition precedent to indemnification.[2] Asset Purchase Agreement § 8.02(b). Smurfit gave written notice to SP on December 18, 2000, after the arbitrator's decision. Complaint ¶ 28.

Indemnification by SP is mentioned in two provisions, §§ 6.01(c) and 8.02(a), and both are applicable. Section 6.01(c) relates specifically to severance benefits, and that is what Smurfit seeks to recoup here. Section 8.02(a)(i) applies to breaches of any representation, warranty, covenant or agreement, and § 8.02(a)(iv) applies to operations of the Mill after the Closing Date. Since Count II alleges that SP breached its agreement in § 6.01(a)(i), and that is what caused the

---

[2] "A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690, 660 N.E.2d 415, 418 (N.Y. 1995) (quotation omitted).

5

arbitrator to award severance benefits, see Complaint Exh. C (Arbitrator's Decision) at 9, the claims arguably fall within § 8.02(a)(i). In addition, SP's conduct at issue occurred "shortly after [it] took over the operation of the Newberg Mill." Complaint ¶ 23. So, the claims also arise out of operations of the Mill after the closing date, falling within § 8.02(a)(iv). As alleged in the complaint, SP's duty to indemnify arises from both §§ 6.01(c) and 8.02(a).

How does § 8.02(b), the "prompt written notice" provision, interact with §§ 6.01(c) and 8.02(a)? First, § 8.02(b) applies to "any claim...as to which [Smurfit] may request indemnification hereunder." I read this to cover indemnification under either §§ 6.01(c) or 8.02(a). Next, I must decide whether written notice is a condition precedent to indemnification. The contract does not explicitly make § 8.02(b) a condition precedent to anything, see *e.g.*, *Constitution Reinsurance Corp. v. Stonewall Ins. Co.*, 980 F. Supp. 124, 127 (S.D.N.Y. 1997)[3], but it has long been the rule that "no technical words are requisite to render a stipulation a condition precedent or subsequent, nor does it depend on the position of words, but it rests on the good sense and plain understanding of the contract, and the acts to be performed by the parties respectively." *Barruso v. Madan*, 2 Johns. 145, 1807 WL 828 (N.Y. Sup. Ct. 1807); see also *Finlay v. King's Lessee*, 28 U.S. 346, 374-375 (1830) (Marshall, C.J.).

Despite the venerable rule, most modern courts require something close to explicit language in order to create a condition precedent. "A contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition." *Unigard Security Ins. Co., Inc. v. North River Ins. Co.*, 79 N.Y.2d 576, 581,

---

[3] The contract in *Constitution Resinsurance* said, "As a condition precedent, the Company shall promptly provide [notice]." 980 F. Supp. at 127. The contract in this case does not contain such an explicit statement.

594 N.E.2d 571, 573 (N.Y. 1992). Absent express language, notice provisions have been construed as duties, not conditions precedent. *Toyomenka Pacific Petroleum, Inc. v. Hess Oil Virgin Islands Corp.*, 771 F. Supp. 63, 68 (S.D.N.Y. 1991) (written notice is not a condition precedent to force majeure clause); *Red Ball Interior Demolition Corp. v. Palmadessa*, 947 F. Supp. 116, 123 (S.D.N.Y. 1996) (notice is not condition precedent to indemnification).[4] Issues of indemnification and notice often arise in insurance contracts, and in that context, New York has a special rule. "[T]he standard provision in a contract of primary liability insurance requiring the insured to give the insurer prompt notice of a potential claim operates as a condition precedent." *Unigard*, 79 N.Y.2d at 578, 594 N.E.2d at 571.

The contract at issue has many features akin to a contract for primary liability insurance. SP, the indemnitor, has: a right to investigate the claim, a right to counsel of its own choosing, a right to direct the defense of the claim, and the right to settle the claim. As with primary insurance, these rights would be rendered meaningless if prompt notice was not given to the indemnitor. If a contract is not a primary insurance contract, but is analogous to one, the presumption that notice is a condition precedent can still apply. *EMI Catalogue Partnership v. CBS/Fox Co.*, 1994 WL 163700 * 9-10 (S.D.N.Y. 1994) (looking to insurance contract law for guidance and finding notice a prerequisite to indemnification); *American Home Assurance Co. v. International Ins. Co.*, 90 N.Y.2d 433, 443, 684 N.E.2d 14, 18 (N.Y. 1997) (since excess insurers

---

[4] If notice is a duty then the indemnitor would have to demonstrate a material breach or prejudice in the failure to receive notice. If notice is a condition precedent, then the indemnitor does not have to demonstrate prejudice and its obligation to indemnify is forgiven.

have most of the rights and obligations of primary insurers, prompt notice is a condition precedent to indemnification).

Based on the language of the contract, specifically § 8.02(b), the parties intended that SP would act like an insurer with respect to the indemnified claims. The bargained-for rights that SP received in the Asset Purchase Agreement are directly analogous to the position of primary and excess insurers, and the New York Court of Appeals has found that these rights justify protection by way of a legally presumed condition precedent. *Security Mut. Ins. Co. v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 440, 293 N.E.2d 76 (N.Y. 1972); *American Home Assurance*, 90 N.Y.2d at 443.[5] In this case, I am not concerned with the expectations of the entire insurance industry; nevertheless, the rationale of the insurance cases supports the application of the condition precedent presumption to this contract.

Smurfit argues that this exception would swallow the rule that conditions precedent are not to be imposed onto ambiguous contracts. I disagree. Here, the parties (sophisticated businesses at arms-length) bargained for insurance-like rights and bargained for prompt written notice. The court in *Red Ball*, 947 F. Supp. at 123-124, did not have the benefit of *American Home Assurance, supra.*, and in light of the highest court's reasoning, I am persuaded that the Court of Appeals would decide that notice is a condition precedent to indemnification (for any claim) in this contract.

---

[5] In New York, as with primary and excess insurance, prompt notice is a condition precedent to underinsurance liability. *Metropolitan Property and Casualty Ins. Co. v. Mancuso*, 93 N.Y.2d 487, 715 N.E.2d 107 (N.Y. 1999).

8

Smurfit did send written notice to SP, Complaint ¶ 28, so the question becomes whether this was prompt or not. Perhaps this question cannot be resolved on a motion to dismiss. See *EMI*, 1994 WL 163700 *10 (findings of fact/conclusions of law after bench trial). In this case, however, I can resolve the question. If the facts alleged in the complaint (written notice sent one year after the Union employees filed grievances against Smurfit, and after the final ruling in arbitration) conclusively demonstrate that Smurfit is not entitled to relief, then plaintiff has pled itself out of court. See *Klug v. Chicago School Reform Bd. of Trustees*, 197 F.3d 853, 859 (7th Cir. 1999); see also *Metropolitan New York Coordinating Council on Jewish Poverty v. National Union Ins. Co. of Pittsburgh*, 634 N.Y.S.2d 730, 731, 222 A.D.2d 420, 421 (N.Y. App. Div. 1995) (deciding, on motion to dismiss declaratory judgment action, reasonableness of delay in notice).

The employees filed the grievances in December, 1999, the arbitration occurred in August, 2000, and the arbitrator issued his decision on December 4, 2000. Complaint ¶¶ 24-26. In *EMI*, the failure to give notice in time for the indemnitor to manage the defense was held to be unreasonable. *EMI*, 1994 WL 163700 * 10. That is the situation here.[6] The facts alleged in the complaint make it clear that Smurfit did not give notice in time to further its purpose – to give SP an opportunity to take the reins.[7] Smurfit does not argue that there are some plausible facts that can be inferred from the complaint that justify its failure to provide written notice sooner,

---

[6] In some circumstances, a mere four-month delay in giving notice is unreasonable. *Zadrima v. PSM Ins. Cos.*, 616 N.Y.S.2d 817, 818, 208 A.D.2d 529, 530 (N.Y. App. Div. 1994).

[7] The right to direct the defense and settlement of claims is not a condition precedent to indemnification. Obviously, SP can defend claims only if it has notice. The fact that Smurfit may not have given notice in time for SP to participate in defending the arbitration is relevant to the promptness of notice (which is a condition to indemnification), but is not a failure of some other condition (the right to defend). The language of § 8.02(b) does not support a reading of "right to defend" as a condition precedent, and unlike with notice provisions, there is no such presumption as a matter of New York law.

9

and I see none.[8] Therefore, I find that a one-year delay in giving written notice was not "prompt," and thus the condition precedent to indemnification did not occur.

I grant the motion to dismiss Count I.

## II. Count II – Breach of Contract

Although based on essentially the same facts, Count II is an alternative, independent theory of liability. Smurfit says SP did not give the Union employees employment on comparable terms, as promised, and this led to the arbitrator's decision. This is not an indemnity claim (for which notice is a condition precedent), it is a breach of contract claim. Smurfit says SP breached § 6.01(a)(i).

According to the complaint, the breach was SP's decision not to give the Union employees credit for years of service with Smurfit in determining certain benefits. Complaint ¶¶ 32-33. SP says this decision cannot be a breach of § 6.01(a)(i) because other provisions of the contract

---

[8] In its response brief, Smurfit says an SP human resources manager was present at the arbitration. I take it Smurfit is arguing that SP had actual notice of the claims. This is not enough. If written notice is a condition precedent, which it is, then only written notice will trigger the duty to indemnify. See *American Manufacturers Mutual Ins. Co. v. CMA Enterprises, Ltd.*, 667 N.Y.S.2d, 724, 725, 246 A.D.2d 373 (N.Y. App. Div. 1998) (if insured has independent obligation to provide written notice, fact that insurer has actual notice is irrelevant). The question of promptness is not a back-door to the question of prejudice.

Smurfit does not argue, rightly so I think, that it did not give notice because it did not believe notice was a condition precedent. This would be a kind of intent-of-the-parties or course-of-conduct argument for notice as a duty. But it would not be persuasive; such a unilateral declaration of intent is not supported by the structure and language of the contract. Another possibility (also not argued) is that Smurfit did not give notice because it had a relationship with the Union and did not want to cede authority to conduct negotiations and the defense to SP. Perhaps Smurfit thought it would be worth damaging its indemnity claim in exchange for retaining control and the alternative, albeit harder to prove, breach of contract claim it could still assert against SP. These points are not made, and of course are not valid reasons for not performing a condition precedent. I simply note that there may unspoken, but calculated, reasons for Smurfit's conduct. Again, this is just an observation on my part and not a rationale for my decision.

demonstrate that the "comparable" terms and conditions mentioned in § 6.01(a)(i) have nothing to do with giving credit for years of service in determining employee benefits.[9]

For example, the contract says that SP does not assume "any liability or obligation of [Smurfit] arising out of or incurred in connection with (i) the operation of any employee benefit plan, policy or program of any kind or description whatsoever... or (ii) any contract or agreement relating to any such employee benefit plan, policy or program." Asset Purchase Agreement § 2.03(c). The contract also makes it clear that SP was not assuming the Collective Bargaining Agreement between Smurfit and the Union. Asset Purchase Agreement § 6.01(a). Finally, § 6.05 says SP will give credit for years of service to Smurfit for purposes of: determining eligibility for participation in SP's employee benefit plans; determining the duration and amount of short-term disability benefits; and vesting under any retirement plans. Section 6.05 does not reference computation of pension benefits or early retirement benefits. The complaint does not allege that SP has breached § 6.05.

Smurfit says none of the above provisions shed any light on what should be considered "comparable" terms and conditions, and that I must defer to the allegations of the complaint. I cannot, especially on this record and posture, decide what precisely the outer limits of "comparable" employment include, but the other provisions of the contract must provide some insight into the meaning of the term. While this is a matter of contract interpretation, a question of law, I need additional context to decide the question. Simply saying SP did not do what it

---

[9] The benefits at issue are "pension, early retirement, and life and health insurance." Complaint ¶ 23. According to the arbitrator, SP did not take the employees' time with Smurfit into account when computing pension credits, service for early retirement, or for retiree life insurance benefits. Complaint Exh. C (Arbitrator's Decision) at 4.

11

promised to do is, for now, enough to state a breach of contract claim. Perhaps some discovery will allow the parties to develop this relatively narrow question and provide me with sufficient information to declare whether a breach has occurred.

I deny the motion to dismiss Count II.

### III. Conclusion

Defendant's motion to dismiss [5-1] is granted in part, denied in part. Count I is dismissed, Count II survives.

ENTER:

James B. Zagel
United States District Judge

DATE: JUL 13 2001